## Memorandum

*Org. Crime File* 

| Subject | Date |
|---|---|
| Organized Crime/Narcotics Initiatives | July 29, 1982 |

To     . The Attorney General        From   . John Roberts *JR*

A meeting was held today in Rudy Giuliani's office following up on the meeting held on July 14 in your office with Tony Dolan. Present were Rudy, Ken Starr, Stan Morris, Jeff Harris, Steve Brogan, myself, and Tony Dolan. The group discussed possible approaches to implementing the preliminary decision at the July 14 meeting to develop a major push against organized crime, centered around a possible Presidential address. It was generally agreed that the most effective approach would be to link the organized crime and narcotics problems and attempt to duplicate the success of the South Florida Task Force by developing similar task forces in Los Angeles, New York, Chicago, and Texas or New Orleans. Prosecutorial and investigative resources devoted to organized crime and narcotics would be transferred to the designated areas, coordinated out of Washington. This transfer would be accompanied by a major Presidential speech, and the formation of a White House Commission on Organized Crime. You would give speeches laying the groundwork for the Presidential address.

Current plans call for Rudy to develop a rough plan of action to be presented to you next week. We would then work with Tony Dolan to develop a presidential speech, and consider how best to present the package to the President.

cc:   Rudy Giuliani
      Associate Attorney General

Folder:  Organized Crime
Series:  Correspondence Files of Ken
          Starr, 1981-83
       Acc. #60-88-0498  Box 5
     RG 60 Department of Justice

ORGANIZED CRIME PROGRAM
1981 & 1982
SYNOPSIS

The Organized Crime Section, Criminal Investigative Division (OCS/CID) has three investigative priorities listed below in order of importance:

1. La Cosa Nostra (LCN)
2. Non-LCN Groups - Particularly Outlaw Motorcycle Gangs.
3. Narcotics Cartels

During the 1981 and 1982 calendar years, unprecedented successes were achieved in the fight against the number one priority target - LCN. As a result of the highly successful and selective utilization of three major investigative techniques, i.e., informants, undercover operations and Title III electronic surveillances, the majority of the "bosses" and hierarchy of the major LCN families across the United States were indicted and/or convicted. Major investigations utilizing the three techniques mentioned above are currently ongoing on several other families as well as on the new leaders which have emerged to replace those already convicted.

Listed below are some of the major accomplishments recorded during 1981 and 1982. While these accomplishments present a very vivid picture of the enormous success achieved, they by no means represent the entire success achieved by the Organized Crime Program. Numerous indictments and convictions of lower level LCN members and associates have also been obtained but, for the sake of brevity, are not being listed. The following accomplishments are listed according to the three priorities mentioned above.

I. <u>LCN</u>

There are 25 active LCN families in the United States. Currently, major investigations are ongoing regarding all LCN family hierarchies. It is a well established fact that the center of LCN power emanates from New York City's five LCN families. The following major accomplishments have been achieved in this top priority area:

Folder: Organized Crime
Series: Correspondence Files of Ken
Starr, 1981-83
Acc. #60-88-0498  Box 5
RG 60 Department of Justice

NEW YORK

BONANNO family - The entire hierarchy of this family has been indicted and convicted for violations of the RICO Statute. These indictments resulted from an undercover investigation conducted in New York and Florida and from a series of wire taps conducted by the New York office.

COLOMBO family - The "boss" of the Colombo family, Alphonse Persico, has been convicted for ECT and is currently in a fugitive status having forfeited a $250,000 bond. The "acting boss" of the family, Carmine Persico, was convicted of parole violation and is currently incarcerated at Danbury Federal Prison.

GENOVESE family - The "boss" of the Genovese family, Frank Tieri, was convicted on four counts of RICO violation and sentenced to 20 years in prison. He subsequently died of natural causes. A major Genovese family member, John Russo, was convicted for ECT and sentenced to three years imprisonment. Russo is considered an extremely violent individual.

GAMBINO family - A major Gambino family member, Robert DiBernardo, was convicted as a result of a long-term undercover investigation directed at organized crime control of the national pornography industry in the United States. This investigation, which lasted for two years, resulted additionally in the indictment of 41 other individuals on charges of ITOM, ITSP and RICO.

PHILADELPHIA

Russell Buffalino, the boss of the Buffalino LCN family in Pennsylvania, was sentenced to ten years incarceration and a $10,000 fine. Buffalino was convicted of civil rights violations and influencing a Federal witness.

Raymond Martorano, a major capo in the Philadelphia LCN family, was indicted for violation of various Federal narcotics statutes.

Phil Testa, deceased "boss" of the Philadelphia LCN family, at the time of his death was under indictment, along with several other LCN members, on RICO charges. These indictments grew out of the long-running Philadelphia "Gangplank" investigation.

Folder: Organized Crime
Series: Correspondence Files of Ken
Starr, 1981-83
Acc. #60-88-0498  Box 5
RG 60 Department of Justice

2

OPTIONAL FORM NO. 10
MAY 1962 EDITION
GSA FPMR (41 CFR) 101-11.6

UNITED STATES GOVERNMENT

# *Memorandum*

TO : DIRECTOR, FBI (137-7627)          DATE: 6/16/71

FROM : SAC, NEW YORK (137-6684)

SUBJECT: CONF INFT
NY 3461-C-TE
TECIP

ReBulet to NY dated 12/31/70 and NYlets to the Bureau dated 3/5/71, 4/15/71 and 5/12/71.

Informant was paid $600 for information furnished during the period 5/5 - 6/4/71.

Informant is considered to be emotionally stable and reliable and has not furnished any information known to be false.

Informant as reflected in reNYlets has continued to furnish extremely valuable information in a number of noteworthy cases which has resulted in numerous arrests in Bureau cases. Informant has been devoting an increasing amount of time and effort in connection with his "Bureau" oriented activities and in addition because of his problems with local authorities has curtailed his own activities drastically.

Therefore, in view of informant's continuing productivity and since greater demands are being made with regard to information which can be utilized in substantive violations it is recommended that the Bureau authorize continuance of regular payments up to $1000 per month for services rendered as well as expenses incurred. NY feels with this increase in regular payments, informant will not only enthusiastically press for information of value to the Bureau but will even manifest greater zeal.

The following is a summary of information furnished by source since latter referenced letter.

JOSEPH COLOMBO aka;
ET AL
IGB
NY 182-120

Clemente (2)-773

179-1996-152

REC-89 137 - 7627 - 15-

JUL 21 1971

b6 -1
b7C -1

2-Bureau
1-New York
ARV:mmg
(4)

*Buy U.S. Savings Bonds Regularly on the Payroll Savings Plan*

ADDENDUM:  CRIMINAL INVESTIGATIVE DIVISION (CID) 3/6/85 MJS:mh

        The information provided by New York in their
teletype dated 3/1/85, clearly sets forth the basis for their
recommendation for a lump sum payment of $15,000 to this
source.  The recent successes within the New York Organized
Crime Program can be seen as an outgrowth of the fine informant
development program that the Organized Crime Section of the
New York Office has established.  The Organized Crime Section,
CID, recommends the approval of this lump sum payment to
NY 3461-TE.

| APPROVED: | | |
|---|---|---|
| | Adm.Servs _____ | Laboratory _____ |
| | Crim.Inv. _____ | Legal Coun. _____ |
| | | Off. of Cong. |
| Director _____ | | & Public Affs. _____ |
| Exec. AD-Adm. ___ | Ident. _____ | Rec. Mgnt. _____ |
| Exec. AD-Inv. ___ | Inspection _____ | Tech. Servs. _____ |
| Exec. AD-LES ___ | Intell. _____ | Training _____ |

Clemente (2)-1000

NY 137-6684

Recommendations

It is apparent informant has an immediate and pressing need for at least several thousand dollars. Recent contacts with him were at a most propitious time and a lump sum payment would insure his reactivation as an extremely valuable and productive source.

Although in his absence other sources and investigation have revealed activities within the COLOMBO "family", it is felt with this informant's full support significant accomplishments could be made by the Bureau.

Additionaly, NY is confident that after informant's [          ] and his finances are again in order, he could be encouraged to seek the position of "Captain" which COLOMBO offered. With proper direction and guidance informant's position would be of immeasureable value to the Bureau.

b6 -3
b7C -3

It is therefore strongly urged the Bureau approve a $1,500.00 payment based/only on information furnished for which he has not been paid, but also on the outstanding future prospects that he offers. Any lesser amount would not accomplish the results desired, especially in view of past substantial payments made to this informant.

C C s

NY 137-6684

b6 -2
b7C -2

In addition, after ⬚ he was identified by agents participating in the surveillance in the above case as having been at the Bartlett Street drop and will in all likelihood be arrested for Conspiracy in this matter as well.

As the Bureau is aware this informant is in all likelihood the most valuable TE informant both in LCN intelligence, based on his close friendship with JOSEPH COLOMBO and in cases under the Bureau's jurisdiction. In each instance, informant has furnished extremely accurate information, which has resulted in staggering recoveries and numerous arrests. Informant has been able to accomplish and yet through careful planning has been able to keep his reputation above suspicion.

It is felt that based specifically on information in above matter, informant should be paid a lump sum payment of $4000. Again, NY is of the opinion that this will have the effect of maintaining informant's enthusiasm and his continuance in furnishing high caliber information in the criminal field.

NY therefore strongly requests the Bureau approve a $4000 lump sum payment to the informant.

C. C. 4

- 4 -

Clemente (2)-634

NY 137-6684

JOSEPH "CRAZY JOE" GALLO is planning to begin hostilities against COLOMBO.  It is therefore of utmost importance that sources within the COLOMBO sphere such as this informant be nurtured and maintained to insure that the ultimate destruction of this crime "family" can be effected.

In conclusion, it is the opinion of the NYO that informant's past performance has been such so as to indicate the greatest potential for the future in an area that is among the Bureau's primary responsibilities.  It is felt an increase in informant's monthly payments would equitably reward him for his services as well as act as a catalyst for additional effort by the informant.  It is the considered opinion of the NYO that in the long run, increased monthly payments to the informant will result in increased returns truly in the best interests of the Bureau.

C.C.3

Clemente (2)-781

- 9 -

3

150 Park Row
New York, New York 10007
December 29, 1986

Honorable Richard Owen
United States District Judge
Southern District of New York
United States Courthouse
Foley Square
New York, New York 10007.

Re: UNITED STATES v. ANTHONY SALERNO, et al.
SSS 85 CR 139 (RO)

Dear Judge Owen:

I understand that the Government submitted a sentence memorandum in the above case, but they did not serve a copy on me, as they were supposed to inasmuch as I am representing myself. Mr. Meyer advised me that he was served with a copy, and I have been told basically what was in the memorandum, but I am writing this letter to request an adjournment of my sentence because I want a <u>Fatico</u> hearing with regard to many of the things contained in the memorandum.

Many of the items were slanders and lies and I want to call witnesses who can easily disprove a lot of the allegations in the memorandum. I also intend to demand that the memorandum be stricken completely, that it be taken out of the Court file, and that it not be sent to whatever institution where I will be incarcerated.

I give you some examples of what I am talking about. The Government alleged on Pages 19 and 20 that in 1951 my brother, Alphonse, pled guilty in a murder case under my mother's direction, because she asked him to take the rap, but I was really the one who did the killing. That is complete nonsense, since two witnesses actually testified in the grand jury that they saw my brother do the shooting. There are Court minutes, and I would subpoena them as well as putting the witnesses on the witness stand. In addition, Judge Sobel, who presided over the case, is still alive and has knowledge of the facts. He recommended that my brother plead guilty because there was a strong case against him and he didn't want to send my brother to the electric chair. While I was arrested in the case because I was at the scene, I was never charged or indicted. To include this in the Government's memorandum is highly improper.

(continued)

Honorable Richard Owen
Page Two

December 29, 1986

In addition, there is a portion of the memorandum that deals with the death of Mary Bari, and that I was in some way responsible. Such a statement could not be further from the truth. Of course, the Government does not put in the report the fact that Ms. Bari was found in a house at the time of a big drug arrest involving the Famas, which was part of one of the largest drug seizures in New York history and resulted in cases in the Eastern and Southern Districts of New York. Furthermore, I understand she had other affiliations with known drug dealers, so that there may have been many, many reasons why she could have been killed which had absolutely nothing to do with me. I should also like to advise that the statement that she made a threat that she would talk if she was not permitted to go with my brother is complete nonsense. My brother had already been away for three years, and apparently she never made that statement. Also, she was questioned by Agent Richard Suter at least five or six times during the first year of my brother's absence.

Another example of the fact that this memorandum is false and may be intentionally misleading is the discussion on Pages 20 and 21 of the attempt to strangle Larry Gallo in 1961 in the Sahara Lounge in Brooklyn. There is a statement that policemen feared for their lives and did not identify the attacker. The truth of the matter is that the police officers did identify a person named Abbettemarco. A few days later, an informant told the authorities that the policemen had identified the wrong person, and that it was one, Salvatore D'ambrosio, not Abbettemarco. Obviously, I had nothing to do with that, and stating that the policemen were in fear is simply a way for the authorities to cover up the fact that they made a mistake. It is interesting that my present attorney, Stanley M. Meyer, advised me and he will advise the Court, that at that time, before he even knew me, he was an Assistant District Attorney in Brooklyn and worked on that investigation. He actually put evidence into the grand jury and he will tell the Court that there was no evidence whatsoever to charge me with that crime or with anything that happened at the Sahara Lounge.

I respectfully request that my sentencing be adjourned, so that I will have a hearing on this report, that the report be completely stricken, and that the Government be reminded that all papers in this matter should be served on me directly.

Respectfully submitted,

Carmine Persico

Carmine Persico

CC: Michael Chertoff, Esq.
    Assistant United States Attorney
    Southern District of New York
    One St. Andrew's Plaza
    New York, New York 10007

150 Park Row
New York, New York 10007
January 6, 1987

Honorable Richard Owen
United States District Judge
Southern District of New York
United States Courthouse
Foley Square
New York, New York 10007

Re: UNITED STATES v. ANTHONY SALERNO, et al.
SSS 85 CR 139 (RO)

Dear Judge Owen:

I am submitting this letter as my response to the Government's sentencing memorandum, a copy of which I now have, and concerning which I previously sent you a letter on December 29, 1986. In that letter I gave you examples of specific instances in the report where the Government has lied and which contained intentionally false information. I have also asked that I get a hearing on this matter, and I will provide you with a list of names of witnesses that I would like called on my behalf.

In my previous letter I discussed three areas in the report that I took strong objection to: the situation regarding my brother's plea of guilty in a murder case, the situation involving the death of Mary Bari, and the situation involving the attempted strangulation of Larry Gallo in the Sahara Lounge in Brooklyn in 1961. Incidentally, with regard to Mary Bari, a further fact that you should be aware of is that one of her boyfriends, who was allegedly involved in drugs, was found murdered and his body cut up and left in a plastic bag. Certainly, since she was involved with at least three separate people in the drug business, there would seem to be more reason to suppose that her death was the result of drugs rather than suggesting anything having to do with me. Her associates along these lines were not even mentioned in the Government's sentencing memorandum, and I think that, in and of itself, is a clear omission and shows the Government's intention to mislead this Court and blame me for everything that has occurred, even though there is no evidence that I had anything to do with any of these situations.

Now that I have had more time to read the memorandum, I wish to point out other errors in the report, and again show to you that these errors can be nothing other than intentional attempts to mislead the Court and prejudice the Court against me. The objections I raise can easily be demonstrated to be valid at a hearing. I will not repeat the three areas that I discussed in my December 29th letter, but I will make reference to the other issues according to the page numbers of the Government's memorandum.

(continued)

Honorable Richard Owen
United States District Judge
Southern District of New York

Page Two
January 6, 1987

PAGE 8

The Government makes reference to Tape No. GX400, which is the tape recorded
on January 26, 1983 at the Casa Storta restaurant. The Government alleges
that Langella was running the Colombo Family while I was away in jail, but
then whenever a matter of real importance came up, he could always make a
move to communicate with me. The tape does not say that. On the tape,
Langella specifically said that he was running the Family, and also said
he could send someone to see me. The fact of the matter is that no one
visited me, no one saw me, and I was in a situation where I received no
visitors whatsoever from that date until the following March. That, of
course, would show no communication between me and anyone. In fact, I am
glad the Government brought this up, because we have been trying to subpoena
the records of all people who visited me in the various institutions from
1979 or 1980 until 1984, but they have mysteriously been lost. Judge Keenan
signed two subpoenas in the previous case requesting production of the visit-
ing records, but the Government claimed that they could not be found. They
were obviously lying, because the visiting records introduced in this case,
which showed that Mr. Langella visited me in 1978 or 1979, would have showed
that he never visited me after that. These visiting records would have proven
my innocence and the fact that I knew nothing about what was going on in the
construction business, and in fact, Your Honor will recall that while the jury
was deliberating they asked to hear this very tape, Tape No. GX400, which was
recorded on January 26, 1983, and a 1985 tape, as well as testimony regarding
who visited me in jail. Your Honor allowed the testimony of an agent to be
read to the jury that in 1981 he reviewed the records of 1978 or 1979 and
that Langella visited me on various occasions. When I asked that you point
out to the jury the dates of the two tapes that they had requested, the point
being that they should be aware that the tapes were four to six years after
the last record of Langella visiting me. You refused, and said that the jury
could get the dates from the transcripts, even though the transcripts were not
evidence in the case, and you did not even tell the jury to look at the trans-
cripts to get the dates. The Government, thus, seems to take advantage of
the situation they had created, that is, alleging that I controlled the Family
while I was in jail, when, on the other hand, it destroyed all records that
the Government knows would prove this was not true. My argument in this matter
is logical and is further buttressed by the fact that if I was controlling the
Family from jail, how come my voice never appeared on the telephone of some of
my friends on which tapes existed. These friends would include Langella, Dominick
Montemarano, the Casa Storta and the various clubs and other numbers that were
tapped or bugged. I think that the failure of the Court to clear this matter up
with the jury is reversible error, and I again ask for a new trial because of it,
but I also point out that these allegations should in no way be considered with
respect to sentencing because they are simply not true.

(continued)

Honorable Richard Owen
United States District Judge
Southern District of New York

Page Three
January 6, 1987

## PAGES 9-10

Allegations made on these pages that Persico and Langella sat as Bosses for
the Colombo Family regarding the construction scheme were DeChristopher testi-
mony, but it should be pointed out that DeChristopher testified that Persico
never mentioned the words, "Boss" or "Commission".

## PAGE 20

The Government alleges that Carmine Persico boasted to Fred DeChristopher that
he was one of the triggermen chosen by the Commission to gun down Boss Albert
Anastasia in a Manhattan barbershop in the mid 1950's. Here again is a com-
plete fabrication and a total misconstruction of what supposedly happened.
In the 302 report which was Government's Exhibit 3500-950-K, DeChristopher said
that they were talking about Jimmy Fratianno's book. Even if you assume that
what DeChristopher said is true, which we do not even think the jury did, what
DeChristopher said was simply that Carmine Persico said that the F.B.I. knows
who really hurt Albert Anastasia. Persico never said he did it, and he cer-
tainly didn't mention the word "Commission" or say that the Commission ordered
the killing or that he was one of the triggermen chosen by the Commission. Here
again, the Government is misleading this Court. DeChristopher did say that
Persico pointed to his own chest when he said the F.B.I. knew who hurt Anastasia,
and I submit that not only is that nonsense but it certainly is not what the
Government says in its sentencing memorandum.

Also on Page 20 the Government alleges that Persico was one of the killers of
Salvatore DeSimone. The truth of the matter is that that is a total lie, and
we will submit proof at a hearing that DeSimone died of natural causes and not
as a result of any killing. In actuality he had a heart attack in his home
on February 13, 1966, two days after his mother died. The death certificate
will be offered in evidence which conslusively shows that Mr. DeSimone died
not from any homicide but of natural causes. We will put the attending physi-
cian on the witness stand, if necessary, as well as relatives. Such an allega-
tion by the Government that this person was shot and killed by Carmine Persico
is not only made without checking the facts, but represents reprehensible con-
duct on the part of the prosecution and shows that they are not interested in
the truth, but merely are attempting to make completely irresponsible allega-
tions.

## PAGE 21

The Governmnet alleges that in 1962 when Joseph Profaci died, his brother-in-law,
Joseph "Sally the Sheik" Magliocco took over the Family. The Government cannot
even get their names straight, and this mistake shows the lack of care taken by
the Government regarding the whole report. Records will show that the person

(continued)

Honorable Richard Owen
United States District Judge                              Page Four
Southern District of New York                            January 6, 1987

known as "Sally the Sheik" and the person known as Joseph Magliocco are two
completely different people. As usual, the Government's sources of informa-
tion are totally inaccurate. Also on that page, the Government alleges that
Persico admitted to Mahlon Steward while they were in prison together in
Illinois that he tried to murder Larry Gallo at the Sahara Lounge. It is
believed that that was not the testimony in the case, but that Mahlon Steward
simply said that Dominick Cataldo told him that Persico was a big shot in the
Gallo war. That is a horse of an entirely different color.

It should also be pointed out that on the bottom of Page 21 it was alleged
that Persico was arrested in connection with the beating of Sidney Slater in
the Copacabana on January 5, 1962. It is entirely improper and misleading
that the Government does not add that those charges were dismissed and Persico
was never convicted of any crime involving Sidney Slater. To leave that in-
formation out and not make this Court aware of it is again trying to present
a one-sided and unfair picture, and we submit that this type of approach to
a sentencing memorandum is so one-sided that the entire report is tainted and
should be completely disregarded.

PAGE 22

The Government refers to a 1971 trial in Manhattan involving a loansharking
operation, and claims that six prosecution witnesses failed to appear, causing
Persico to be acquitted, and that Gennaro Langella was in the courtroom when
the verdict was read. This is again completely untrue. First of all, Judge
Postel closed that trial to the public, which the United States Attorney admits,
but what this Court should know is that after the New York Post unsuccessfully
tried to get the Appellate Division to reverse Judge Postel's decision, the
trial was completely closed to the press and public and no one was permitted to
be in the courtroom until after the case ended. Thus, it was impossible for
Langella to be in the courtroom when the verdict was read, and the statement
by the United States Attorney in this sentencing memorandum is entirely untrue.
Additionally, every one of the six prosecution witnesses was put on the witness
stand. No one failed to appear. The Government also fails to mention that the
State's chief witness, Gaspare Vaccaro, recanted his testimony and testified
that Persico was involved in four other hijacks, not one hundred, but that he
was not involved in the one on trial.

More important, the Government claims that Samuel Lessner, a witness, was lured
into a car and was never seen again, clearly implying that Persico and Langella
had him killed. That is another lie. A witness, Sylvia Winograd, testified that
she saw Samuel Lessner five months after he supposedly vanished, and it should
be pointed out that Lessner was not a witness in the case anyway. Lessner, in
fact, was arrested and was a defendant in the case. If he ran away, it was be-
cause he absconded to avoid prosecution. There was no evidence to suggest foul
play and the record of the proceedings can be subpoenaed in that case. These
allegations are completely unfounded, and once again are so unfair that they are
not worth the paper they are printed on.

(continued)

Honorable Richard Owen
United States District Judge
Southern District of New York

Page Five
January 6, 1987

Again on Page 22 there is an allegation that Salvatore D'Ambrosio was killed at Carmine Persico's direction. That is also untrue, and the defense can provide evidence that Carmine Persico was out of town with a relative of D'Ambrosio when the killing occurred.

## PAGE 23

With regard to Mary Bari, that was discussed in the letter previously sent to the Court. It should be pointed out, however, that Mary Bari's boyfriend was found dead and his body chopped in little pieces in August or September of 1984, and she was connected with two other alleged drug dealers, both of whom were convicted of drug offenses and are now in jail. It seems that the Government would do well to direct its attention elsewhere than trying to blame Persico with another crime that he had nothing to do with.

On Page 23 the Government also alleges that Persico participated in the planning of Joey Gallo's murder in 1972, but this, too, has been disproven by other events. Judge John Keenan was in the Manhattan District Attorney's Office at the time of that incident and actively investigated that affair. One of his chief informants was Joseph Luparelli, who wrote a book entitled, "The Luparelli Tapes". In the book, it is stated that the killing of Joey Gallo occurred after a chance meeting when he was seen in the restaurant. He was killed spontaneously. There was no planning for that occurrence. In any event Persico was incarcerated in the federal penitentiary in Atlanta at the time.

## PAGE 24

The Government refers to the 1985 slaying of Carmine Persico's son-in-law, Steve Piazza. The Government contends that the murder occurred because of a dispute between the son-in-law and Carmine Persico about the son-in-law's criminal activities, but the Government then admits that it has no specific information as to who ordered the murder. It then says informants are certain, however, that the murder could not have been committed without Persico's direct approval. We ask this Court, how can an allegation like that be brought? The Government admits it has no information, but to make such claim it would have to show that almost every murder that occurred in New York has to get Persico's approval. I am sure the Government won't come forward with their sources, and such an insubstantiated allegation is almost impossible to counteract. The fact, however, is that the son-in-law, Steve Piazza, was shot once before at a time before he even married Persico's daughter. We believe that the shooting occurred in 1976, so that obviously that shooting did not require Persico's approval, because there was no relationship. In addition, Piazza had already been separated from Persico's daughter for two years before Persico got out of jail. There was absolutely no reason for Persico to be involved in the shooting of Piazza, and since Piazza had been shot before there was even a relationship, it is reasonable to assume he had other involvements. When the killing occurred, Persico was incarcerated at the Metropolitan Correctional Center.

(continued)

Honorable Richard Owen
United States District Judge
Southern District of New York

Page Six
January 6, 1987

PAGES 23-24

The Government discusses the meeting that occurred in the house of Vincent
Regina, and it claims that "Johnny Irish" Matera was murdered at Persico's
order, as was Vincent Regina, the owner of the house, and his brother, Anthony.
In November of 1983 the Regina bodies were found in a burned automobile. Here,
too, these allegations are untrue and even slanderous. The fact is, the kill-
ing occurred shortly after Anthony Regina's release from jail. Anthony had
been in jail for a murder that he committed some twenty years before. He was
segregated in jail. He constantly caused trouble and had a fight with one
prisoner      in jail who he threatened to kill. It is more probable that the
Regina killing was directed at Anthony, because it occurred very shortly after
he had spent twenty years in jail and was released, and probably Vincent was
killed because he happened to be with his brother at the time. My present
attorney has advised me that Vincent Regina testified in the grand jury in-
vestigating that matter and the grand jury testimony was made public during
the Brooklyn trial of Gennaro Langella. Regina's grand jury testimony was
supportive of Langella's position regarding the purpose of the meeting and
supports my position that I did not attend the meeting and did not partici-
pate in any discussions. It is certainly not to my interest that Vincent
Regina be killed. It is very much to my interest that he be alive so that he
could testify in my behalf, and he could have testified in the Langella trial.
Langella, no doubt, would have called him as a witness. This is another ex-
ample of the careless and improper attempts by the Government to influence
this Court, and it comes about because the prosecution is totally unaware of
the Regina situation and has misconstrued all of the events that occurred.
On a hearing I would call witnesses and I would introduce into evidence the
Regina grand jury testimony.

I ask that my sentence be adjourned and that I be afforded a hearing and the
opportunity to prepare for it and call witnesses. In the alternative, I ask
that the Government's sentencing memorandum be completely disregarded, stricken
from the record, and the Government be directed not to forward it to any insti-
tution where I am incarcerated or any Parole Board that considers my case.

Respectfully submitted,

*Carmine Persico*

Carmine Persico

CC: Michael Chertoff, Esq.
    Assistant United States Attorney
    Southern District of New York
    One St. Andrew's Plaza
    New York, New York 10007

4



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 4, 1996

*Non Disclosable*

**By Facsimile**
**Sam Shoquist**
**United States Parole Commission**
**5550 Friendship Boulevard**
**Chevy Chase, Maryland 20815-7201**
**(301) 492-5525**

Dear Mr. Shoquist:

　　　As we discussed by telephone on Friday, it is our intention to participate, to the extent possible, in parole proceedings and determinations for many of the mafia members who were convicted in prosecutions by this Office in the last decade. To that end, you suggested that I provide you with a list of the defendants in whom we are most interested. Accordingly, please keep us apprised of the schedule of any parole proceedings involving any of the defendants named below. I would also appreciate it if you would notify the respective institutions of our interest in participating in the parole hearings for these individuals.

| NAME | INMATE # | FACILITY | |
|------|----------|----------|---|
| Carmine Persico | 74666-158 | USP Lompoc | FR |
| Gennaro Langella | 10405-054 | USP Terre Haute | |
| Anthony Corallo | 08341-016 | MCFP Springfield | |
| Salvatore Santoro | 19814-054 | MCFP Springfield | NR |
| Christopher Furnari | 19815-054 | FCI Allenwood | FR |
| Anthony Indelicato | 19706-054 | FCI Allenwood | FR |
| Dominick Montemarano | 19791-054 | FCI Loretto | FR |
| Anthony Scarpati | 10404-054 | FCI Allenwood | |

　　　It appears that of the defendants named above, Corallo is scheduled for a parole hearing this month. If that is the case, please let me know immediately.

Sam Shoquist
June 4, 1996

2

If you need additional information please let me know.

Very truly yours,

MARY JO WHITE
United States Attorney

By: _____
    DAVID N. KELLEY
    Chief, Organized Crime & Terrorism
    Tel.: (212) 791-1131

5

b7D

but that lately the family was crumbling and losing cohesion and PERSICO even feared they could be "absorbed" by another family. Accordingly, there had been continuing meetings on Tuesday, Wednesday and Thursday, where a number of new proposals were put forth.

JOSEPH YACOVELLI, who is presently a member of the Commission, having taken JOE COLOMBO's spot, was proposed as Boss with ALPHONSE PERSICO to become Underboss; THOMAS "SHORTY" SPIRO would be made Acting Captain, and take over the PERSICO crew; HARRY FONTANA, Capo, would be demoted to a Soldier because of his disinterest; that peace will be made with the GALLOs and, in fact, PERSICO had offered to meet with [                ] at [        ] appointed time and place providing [        ] furnished one that the Commission would be petitioned to allow the Family to make new members and they are proposing that JERRY LANGELLA, SALVA-
TORE ALBANESE, ANDREW RUSSO (a loyal PERSICO relative), [        ] and at least one additional GALLO "nominee".

b6
b7C

PERSICO continued if these proposals are accepted, YACOVELLI will then be in a position to call in the GALLOs at any time and that when convenient they would all be killed. In adition, PERSICO said that after the GALLOs "were taken care of" they would then kill GREGORY SCARPA since bad blood existed between YACOVELLI and SCARPA and further SCARPA was getting "too big" comparing him to [        ] [        ] COLOMBO Soldier, who is missing and believed dead.

b6
b7C

PERSICO also advised he had heard a rumor that the GENOVESE crew is considering putting the entire family into legitimate pur- suits for a year or two because of the heat and because of TOMMY EBOLI's murder.

It is noted after informant furnished the names of the "proposed new members" he was asked why his name was not mentioned, to which informant laughed and said "you know damn well what I am". This aspect was not pursued at this time but NY is certain informant is a member of the COLOMBO family under ALPHONSE PERSICO and in the future, will be carried as such. As soon as it is feasible, informant will again be queried regarding this.

## EFFORTS TO EXPAND COVERAGE

Additional targets have been selected to increase TECIP coverage.



NY 137-6684

Informant added that one [                    ]
[                                              ] also is active in this    b6 -2
operation and is also a shylock.                                          b7C -2

JOSEPH COLOMBO
AR
NY 92-1965

BUDDY SCIANDRA
TECIP
NY 137-NEW

On 9/22/71, informant advised he is familiar
with one BUDDY SCIANDRA aka Fat Buddy, who although not
a "member" of the COLOMBO family had in the past been a
close associate of JOE COLOMBO's.  Informant said he recently
learned that SCIANDRA had put on the street approximately
$30,000 of CARLO GAMBINO's money and that SCIANDRA had
become jammed up due to his gambling losses and had used
juice payments to cover same.  He stated consequently he
is unable to pay GAMBINO and has no other funds available.
Informant said SCIANDRA allegedly went to GAMBINO and threw
himself at his mercy.  GAMBINO, however, supposedly told
SCIANDRA that he "didn't want to know anything but just
wanted his money back or else".  Informant said SCIANDRA
is consequently upset over this situation.

It is felt that SCIANDRA might make a logical
target under the TECIP of the NYO.

JOSEPH YACOVELLI
AR
NY 92-3196

On 9/24/71, informant advised that he had
learned through a source that YACOVELLI had requested
to be allowed to step down as boss of the COLOMBO family
stating he disliked the pressures being brought to bear
on him since he has been designated boss.  His request
was agreed to and VINCENT ALOI, Former Captain, COLOMBO
"family" has been designated boss with YACOVELLI to
serve as Consiglieri.                    Clemente (2) 798

Informant furnished the following information
on 9/29/71:

- 5 -



On 5/10/72, source advised he had been in conversation with ERNEST LA PONZINA, acting captain for RICHARD FUACO, who advised they were hopeful that peace could be made with the GALLOs and that "this stupid war" should be ended.

On 5/17/72 source advised he had learned [ ] has been aligned with the GALLOs but is staying in [ ] had recently contacted [ ] a close and trusted friend, and advised [ ] that he should tell TONY THE CHIEF BONASERA, a COLOMBO soldier, that the GALLOs intend to make hits on GREGORY and SALVATORE SCARPA. Source opined that [ ] is trying to stay close to long time friends who are in the COLOMBO family but who are not openly at war with the GALLOs.

b6 -2
b7C -2

Source continued he heard on the previous Tuesday that JOHNNY "BATHBEACH" ODDO had returned to Florida but that peace efforts were still being made by JOSEPH BRANCATO who remains one of the acting bosses of the COLOMBO family.

On 5/23/72, source advised he heard VINCENT ALOI has been made the boss of the COLOMBO family and is no longer considered an acting boss. Source said that ALOI in company with ROCCO MIRAGLIA and NICHOLAS BIANCO have been meeting regularly with FUNZIE TIERI, acting boss of the GENOVESE family, and CARLO GAMBINO, in an effort to make peace with the GALLOs. Source said that JOHNNY "BATHBEACH" ODDO and JOSEPH BRANCATO have been named as the official mediators in the war. Informant continued that the entire GALLO crew has been granted amnesty and have the option that they could go to any LCN family they felt they would be comfortable with and "turn themselves in" and no harm will befall them. Source stated the only exception to this peace offer was MOONEY CUTRONE who must go to his own family and his fate would be decided by them. Source pointed out that the above holds true because so far the war that has been going on has not been turned into the Commission as a complaint. Source stated it is felt so far that the Commission feels what has been done was right. Source continued that if the COLOMBOs at this point violate the peace, the whole COLOMBO family would be brought before the Commission and that they would lose their family independence. The GALLOs in the meantime have been told that if they don't come in soon, not only will the COLOMBOs be looking to kill them but the entire country will have an open contract. Source stated so far no response has been made by the GALLOs since it is felt that they are attempting to kill at least 2 reputable COLOMBOs so that they can go in with dignity.

Clemente (25)30

-6-



August 11, 1972

Attached teletype reports that a
New York informant recently met with
Salvatore Profaci, son of former La Cosa
Nostra (LCN) "boss" Joseph Profaci.
Profaci said he recently attended funeral
in Detroit (probably William Tocco –
prominent LCN member, buried 6/1/72).
Profaci received $14,500 from "boss"
of St. Louis (Joseph Giardano) LCN "family"
to be given to Joseph Colombo "family."
This payment was said to be one of two annual
payments given to Colombo as his share of
junket activity to Las Vegas Dunes Hotel.
Profaci requested informant to arrange
meeting between him and Vincent Aloi,
acting "boss" of Colombo "family."  Informant
contacted capo Charles Panarella who will
arrange meeting between Joseph Yacovelli and
Profaci.  Panarella said that while Aloi
is "boss," Yacovelli "calls the shots."

TDH:rar

9

FD-36 (Rev. 5-22-64)

F B I

Date:     10/27/72

Transmit the following in _____ EN CODE
                                                    *(Type in plaintext or code)*

Via ____ TELETYPE _____ NITEL
                                                    *(Priority)*

TO:       ACTING DIRECTOR, FBI  (92-5509)

FROM:     SAC, NEW YORK (92-1965)


          JOSEPH A. COLOMBO, AR.


          ON OCTOBER TWENTY FIVE, LAST, [                    ]        b6
                                                                     b7C
          [  ] ADVISED HE HAD RECENTLY LEARNED FROM [          ]     b7D

COLOMBO CAPTAIN, THAT A LARGE COLOMBO "FAMILY" SITDOWN HAD

OCCURRED THE PREVIOUS WEEKEND.  THE "SIT" WAS OCCASIONED BY


1 - NEW YORK [          ]
1 - NEW YORK [          ]
1 - NEW YORK (92-6703)
1 - NEW YORK (92-5954)
1 - NEW YORK (92-3189)
1 - NEW YORK (92-2107)
1 - NEW YORK (92-3190)
1 - NEW YORK (92-3196)
1 - NEW YORK (92-2300)
Approved: ___(11)  1 - SUPV #52        Sent _____ M  Per _____
          Special Agent in Charge

☆U.S.Government Printing Office: 1972 — 455-574

b6
b7C
b7D

FD-36 (Rev. 5-22-64)

F B I

Date:

Transmit the following in _____
                              (Type in plaintext or code)

Via _____
                              (Priority)

NY 92-1965

PAGE TWO

b6
b7C
b7D

ADDITIONALLY, THAT VINCENT ALOI WAS STEPPING DOWN AS ACTING BOSS

BECAUSE HE "COULDN'T TAKE THE HEAT" AND THAT JOE YACAVELLI,

CONSIGLIERI, WOULD TAKE OVER AS ACTING BOSS TO WHICH BOTH MIRAGLIA

AND SCARPA IMMEDIATELY EXPRESSED GREAT DISPLEASURE. [          ] THEN

ADMITTED HE WAS [                                        ]

Approved: _____    Sent _____ M   Per _____
              Special Agent in Charge                   ☆U.S.Government Printing Office: 1972 — 455-574

F B I

Date:

Transmit the following in _____

*(Type in plaintext or code)*

Via _____    _____

*(Priority)*

NY 92-1965

PAGE THREE

WOULD"REALLY"BECOME ACTING BOSS.

    ON OCTOBER TWENTY SEVEN, INSTANT, [          ]

[          ] ADVISED THAT HE HAD LEARNED THE FOLLOWING INFORMA-

TION ON THE PREVIOUS EVENING FROM [          ]

[          ]

    [          ] COMPLAINED THAT AT ONE TIME THE COLOMBO

"FAMILY," [          ]

[          ]

WAS THE MOST FEARED MOB IN THE USA, BUT THAT LATELY THE FAMILY

WAS [          ]

[          ] ACCORDINGLY, THERE

HAD BEEN CONTINUING MEETINGS ON TUESDAY, WEDNESDAY AND THURSDAY,

WHERE A NUMBER OF NEW PROPOSALS WERE PUT FORTH.

    JOSEPH YACAVELLI, WHO IS PRESENTLY A MEMBER OF THE

COMMISSION, HAVING TAKEN JOE COLOMBO'S SPOT, WAS PROPOSED AS

"BOSS," WITH [          ]

[          ] AND TAKE OVER THE

PERSICO CREW; HARRY FONTANA, CAPO, WOULD BE DEMOTED TO A

b6
b7C
b7D

Approved: _____    Sent _____ M    Per _____
      Special Agent in Charge

☆U.S.Government Printing Office: 1972 — 455-574

FD-36 (Rev. 5-22-64)

F B I

Date:

Transmit the following in _____
                                                    *(Type in plaintext or code)*

Via _____
                                                    *(Priority)*

---

NY 92-1965

PAGE FOUR

"SOLDIER" BECAUSE OF HIS "DISINTEREST;" THAT PEACE WILL BE MADE

WITH THE GALLOS AND, IN FACT, [                              ]          b6
                                                                         b7C
[            ] AT [        ] APPOINTED TIME AND PLACE PROVIDING [     ]   b7D

[                                              ] THAT THE COMMISSION

WOULD BE PETITIONED TO ALLOW THE "FAMILY" TO "MAKE NEW MEMBERS"

AND THEY ARE PROPOSING THAT [              ] SALVATORE ALBONESE

,[                                          ] AND AT

LEAST ONE ADDITIONAL GALLO "NOMINEE."

              [          ] CONTINUED THAT IF THESE PROPOSALS ARE ACCEPTED,

YACAVELLI WILL THEN BE IN A POSITION TO CALL IN THE GALLO'S AT

ANY TIME AND THAT WHEN CONVENIENT THEY WOULD ALL BE KILLED.  IN

ADDITION[      ] SAID THAT AFTER THE GALLO'S "WERE TAKEN CARE OF"

WHO IS MISSING AND BELIEVED DEAD.

              [          ] ALSO ADVISED HE HAD HEARD A RUMOR THAT THE

GENOVESE CREW IS CONSIDERING PUTTING THE ENTIRE FAMILY INTO

---

Approved: _____        Sent _____ M   Per _____
         Special Agent in Charge              ☆U.S.Government Printing Office: 1972 — 455-574

FD-36 (Rev. 5-22-64)

F B I

Date: _____

Transmit the following in _____
(Type in plaintext or code)

Via _____
(Priority)

NY 92-1965

PAGE FIVE

LEGITIMATE PURSUITS FOR A YEAR OR TWO BECAUSE OF THE "HEAT" AND
BECAUSE OF TOMMY EBOLI'S MURDER.

b6
b7C
b7D

AS SOON AS IT IS FEASIBLE, INFORMANT WILL AGAIN BE
QUERIED REGARDING THIS.

Approved: _____    Sent _____ M    Per _____
                Special Agent in Charge                    ☆U.S.Government Printing Office: 1972 — 455-574



# FEDERAL BUREAU OF INVESTIGATION

| REPORTING OFFICE | OFFICE OF ORIGIN | DATE | INVESTIGATIVE PERIOD |
|---|---|---|---|
| NEW YORK | NEW YORK | JUN 20 1972 | 3/3/72 – 6/7/72 |

| TITLE OF CASE | REPORT MADE BY | TYPED BY |
|---|---|---|
| JOSEPH YACOVELLI | ANTHONY L. CHRISTY | |
| | **CHARACTER OF CASE** | |
| | AR | b6 b7C |

REFERENCES:

3/10/72.   New York report of SA RICHARD A. GENOVA, dated

Newark letter to New York, dated 3/29/72.
New York airtel to Newark, dated 4/27/72.
Newark airtel to New York, dated 5/3/72.
New York airtel to Newark, dated 5/8/72.
Newark airtel to New York, dated 5/27/72.
New York airtel to Newark, dated 5/31/72.

–P–

ADMINISTRATIVE:

On 3/1/72, [          ] advised that JOSEPH YACOVELLI,   b7D
ROCO MIRAGLIA and VINCENT ALOI were presently in control of

---

| ACCOMPLISHMENTS CLAIMED | | | | | ☐ NONE | ACQUIT-TALS | CASE HAS BEEN: |
|---|---|---|---|---|---|---|---|
| CONVIC. | AUTO. | FUG. | FINES | SAVINGS | RECOVERIES | | PENDING OVER ONE YEAR ☒YES ☐NO |
| | | | | | | | PENDING PROSECUTION OVER SIX MONTHS ☐YES ☒NO |

| APPROVED | SPECIAL AGENT IN CHARGE | DO NOT WRITE IN SPACES BELOW |
|---|---|---|

COPIES MADE:

3–Bureau
1–USA, SDNY
1–Strike Force, SDNY
7–New York (92-3196)
  (1-179-566)
  (1-92-4756)
  (1-92-4123)
  (1-92-6781)
COPIES CONT'D COVER PAGE B

92 - 3,166 - 371

b6
b7C

| Dissemination Record of Attached Report | | | | | Notations |
|---|---|---|---|---|---|
| Agency | | | | | |
| Request Recd. | | | | | |
| Date Fwd. | | | | | |
| How Fwd. | | | | | |
| By | | | | | |

–A–
COVER PAGE

GPO : 1971—448-529

NY 92-3196

ADMINISTRATIVE (Cont'd)

the remanents of the COLOMBO family. On 4/11/72, [          ]
[                    ] NJ, advised
that on Saturday 4/8/72 between 3:30 P.M. and 4:15 P.M.
seven or eight automobiles were at subject's residence,
400 Piermont Road. Men and women were in attendence
and were observed to be wearing black. After the above
vehicles departed a second group of automobiles came to
the residence, staying approximately 45 minutes to an hour.

On 4/16/72, [                    ] advised that JOE GALLO
was killed [                    ] was with YACOVELLI during the GALLO-PROFACI
war and is a ruthless killer who has nothing for brains.
[          ] was with "Sonny Pinto" (true name CARMINE DI BIASE)
early in the morning of 4/7/72 and they saw GALLO in Umberto's
Clam Bar.

On 5/25/72, [                    ] advised that he had
received information that he considers to be be reliable,
that subject was officially designated as the new boss of the
COLOMBO family on Saturday 4/22/72. Source stated that this is
being kept very quiet at this time. Source noted that
subject is very well regarded by all and believes this will
be well received by LCN members.

Source further noted that subject is very close
to [                    ] and has been for many years. Source considers
this very significant in view of reports that [          ] with
SONNY PINTO (true name CARMINE DI BIASE) are responsible for
the shooting of JOE GALLO.

On 4/27/72, [                    ] advised tht [          ]
[                    ] is JOE YACOVELLI [                    ].

COPIES (Cont'd)
1-USA, EDNY
1-Strike Force, EDNY
1-Charlotte
1-Boston
2-Newark (92-1776)
1-New Haven
1-Philadelphia
1-San Juan

b6
b7C
b7D

-B-
COVER PAGE

NY 92-3196

ADMINISTRATIVE (Cont'd)

On 5/12/72, [_____]
[_____] NJ, advised that during March of 1972 on a Sunday
morning he was in conversation with [_____] Last Name Unknown
(LNU) at telephone number [_____] Source stated that
[_____] LNU was [_____] at subject's residence
at 400 Piermont Road, Norwood, NJ. [_____] was done by
[_____] LNU working on weekends.  On one occasion [_____] LNU
telephoned source to ask about the technicalities of the
[_____] and source could hear subject in background.
[_____] LNU made the comment that no one was supposed to know
subject was there.

On 5/12/72 a review of the current telephone
directory reflects that the subscriber to telephone number
[_____]

On 5/24/72 at 12:25 P.M. AUSA [_____]
telephone [_____] advised a source (not identified), advised
that a meeting is to take place in the Bahamas, specific
location unknown, this weekend, for the purpose of naming
a temporary boss to the COLOMBO family.  Source advised that
the meeting is being held to determine who is going to call
the shots in the COLOMBO family inasmuch as subject was
tried but did not work out.

On 5/25/72, [_____] was shown numerous photographs
of known associates of subject.  Source selected a photograph
of [_____] as an individual who appeared
identical to a passenger in an automobile registered to
[_____] which source observed on the premises of
the Gateway Motel, Secaucus, NJ, in the company of three other
individuals.

On 5/23/72, [_____] advised that he had heard
that VINCENT ALOI has been made boss of the COLOMBO family.

On 6/5/72 [_____] advised that subject
continues to be in hiding but is presently considering
"sending in" CARMINE DI BIASE (SONNY PINTO) to see if he is
to be arrested.  In the event subject is not to be arrested
he will then come out of hiding and more actively participate
in "family" business.  Source stated that he had heard that
DI BIASE is a "marked man" and will be killed when he is of
no further use to subject.

On 5/15/72, [_____] was exhibited a
photograph of DOMINICK TRINCHERO who informant identified
as the same individual who in March of 1972 had visited
subject at his Nyack apartment.  Subject also identified

-C-

b6
b7C
b7D

NY 92-3196

ADMINISTRATIVE (Cont'd)

a photograph of [          ] as being identical to the          b6
individual who had rented subject's Nyack apartment.             b7C
Source advised that [          ] resided at [          ]          b7D
[          ], NY, telephone [          ].

        On 5/26/72, [          ] furnished
to Buagents pertinent information concerning shylock loan to
[          ] ECT case re subject
opened, [          ] and is receiving intensive investigative
effort.

        On 5/16/72 AR case opened re Hedonics, Inc.,
101 Gedney St., Nyack, NY, NY 92-6781. [          ] is
subject of instant investigation and matter is receiving
intensive investigative effort.

INFORMANTS:

Identity of Source            Contacting Agent

                        SC [          ]

                        SA RICHARD A. GENOVA

LEADS:

    BOSTON

        AT PEABODY, MASSACHUSETTS. 1. Ascertain subscriber
to telephone number [          ] and discreetly conduct appropriate
investigation to fully identify subscriber bearing in mind
that subscriber may be involved in narcotic operation described
by NY T-2. Emphasis of investigation should be directed
towards LCN association of subscriber.

-D-
COVER PAGE

OPTIONAL FORM NO. 10
MAY 1962 EDITION
GSA FPMR (41 CFR) 104-11.6 .,

UNITED STATES GOVERNMENT

## *Memorandum*

TO     : SAC, NEW YORK [            ]          DATE: 4/25/72

FROM   : SA[                    ]                              b6
                                                              b7C
                                                              b7D

SUBJECT: [                    ]

**JOE YACOVELLI aka**
**AR**
**NY File 92-3196**

        On 4/25/72, informant advised that he has received information he considers reliable that subject was officially designated the new boss of the Columbo family on Saturday, April 22, 1972. He stated that this is being kept very quiet at this time. He noted Joe Yak is very well regarded by all and he believes this will be well received by LCN members.

        Informant noted further that Joe Yak is very close to [            ] and has been for many years. He considered this significant in view of reports that [            ] with Sonny Pinto De Biasi are responsible for the shooting of JOE GALLO.



92-3196-330

SEA[RC]HED _____ INDEXED _____
CL..[CALIZE]D _____ FILED _____
52                APR 2 7 1972
               — NEW YORK               b6
                                         b7C
                                         b7D



1- [            ]
92-3196

*Buy U.S. Savings Bonds Regularly on the Payroll Savings Plan*



FD-263 (Rev. 1-7-72)

# FEDERAL BUREAU OF INVESTIGATION

| REPORTING OFFICE | OFFICE OF ORIGIN | DATE | INVESTIGATIVE PERIOD |
|---|---|---|---|
| NEW YORK | NEW YORK | 1/22/73 | 9/18/72-12/27/72 |

| TITLE OF CASE | REPORT MADE BY | TYPED BY |
|---|---|---|
| JOSEPH YACOVELLI aka | ANTHONY L. CHRISTY | b6 |
| | CHARACTER OF CASE | b7C |
| | AR | |

REFERENCE:

New York report of SA ANTHONY L. CHRISTY, dated 9/18/72.

-P-

ADMINISTRATIVE:

In the interest of brevity, investigation conducted to locate and apprehend JOSEPH YACOVELLI is being reported in NY 88-14194 and is not being duplicated herein.

INFORMANTS:

On October 27, 1972, _____ advised that         b7D
JOSEPH YACOVELLI, who is presently a member of the commission,
having taken JOE COLOMBO's spot, was proposed as "Boss", with

| ACCOMPLISHMENTS CLAIMED | | | | [X] NONE | ACQUIT-TALS | CASE HAS BEEN: | |
|---|---|---|---|---|---|---|---|
| CONVIC. | FUG. | FINES | SAVINGS | RECOVERIES | | PENDING OVER ONE YEAR [X] YES [ ] NO | |
| | | | | | | PENDING PROSECUTION OVER SIX MONTHS [ ] YES [X] NO | |

| APPROVED | | SPECIAL AGENT IN CHARGE | DO NOT WRITE IN SPACES BELOW |
|---|---|---|---|

COPIES MADE:

```
3 - Bureau (92-7506)
1 - USA, SDNY
1 - Strike Force, SDNY
1 - USA, EDNY
1 - Strike Force, EDNY
3 - New York (92-3196)
    (1-88-14194)
```

92-3196-455

| Dissemination Record of Attached Report | | | | Notations |
|---|---|---|---|---|
| Agency | | | | |
| Request Recd. | | | | |
| Date Fwd. | | | | |
| How Fwd. | | | | |
| By | | | | |

COVER PAGE

NY 92-3196

<u>INFORMANTS (CONT'D)</u>

ALPHONSE PERSICO to become "underboss"; THOMAS "Shorty"
SPIRO would be made acting captain and take over the
PERSICO crew; HARRY FONTANA, capo, would be demoted to
soldier because of his disinterest.  Source advised that
after YACOVELLI became boss peace would be made with the
GALLO's thus enabling YACOVELLI to be in a position to
call them in and when convenient they would all be killed.

On 10/28/72, [          ] advised that YACOVELLI        b7D
is planning to take punitive action against the GALLOs to
prevent further inroads into COLOMBO interests and to assert
he is running the COLOMBO family.

On 12/26/72, [          ] advised that THOMAS        b6
DI BELLA was made the new boss and ANTHONY "Abby" ABBATTEMARCO   b7C
was made underboss.  Source further advised that [        ]   b7D
[          ], and JOSEPH YACOVELLI are still in charge of
the family, and DI BELLA is a figurehead.

| Identity of Informant | Contacting Agent |
|---|---|
| NY T-1 [          ] | SA [          ] |
| NY T-2 [          ] | SA [          ] |
| NY T-3 [          ] | Newark letter of 11/10/72 |
| NY T-4 [          ] | SA ANTHONY L. CHRISTY |

b6
b7C
b7D

<u>LEADS:</u>

<u>NEW YORK</u>

<u>AT NEW YORK, NEW YORK.</u>  Will interview JAMES
PICARELLI re business association with and alledged shylock
loan from JOSEPH YACOVELLI.

Will interview [          ] re knowledge of YACOVELLI.        b6
                                                             b7C

13

1/3/73

AIRTEL

TO:        ACTING DIRECTOR, FBI (66-2542-11-34)

FROM:      SAC, NEW YORK [                    ]                    b7D

SUBJECT:   TOP ECHELON CRIMINAL
           INFORMANT PROGRAM
           NEW YORK DIVISION

           The following is a summary of accomplishments of the
TECIP for the month ending 12/29/72.  Also set forth are the
number of PC's, CTE's, [        ] sources and [        ] targets.

                   PC's and CTE's

           As of 12/29/72, the NYO had [   ] CTE's and [   ] PC's.       b7D

           [          ] SOURCES AND [        ] TARGETS

           As of 12/29/73, the NYO had [            ] sources and
[        ] targets.

                                    CTE's      PC's      TARGETS

1 - SAC, DIVISION
1 - SA WILLIAM A. VERICKER, #51
1 - Supvr. #51
1 - Supvr. #52
1 - Supvr. #53
1 - Supvr. #54
1 - Supvr. #55
2 - Bureau        1 - Supvr. #58
1 - New York

WAV:dpk                                                                  b7D
(11)

ADIC
(info)

SEARCHED_____INDEXED_____
SERIALIZED_____FILED_____
      JAN 9  1978
    FBI — NEW YORK

b7D

b6
b7C
b7D

b6
b7C
b7D

b6
b7C
b7D

NY 3461-C-TE advised that he had learned that
CHARLES "MOOSE" PANARELLA has a hijacking crew which is operating
out of Milways Tavern.  Informant said [              ]
[              ] who is part of PANARELLA's "crew" and one [      ]
who has a connection for "loads coming out of New Jersey".
Informant said [      ] also has a "drop" on Richmond Terrace which

b6
b7C

Clemente (II)-324

b7D

_____ and which resulted in the
arrests of _____ and _____

b6
b7C

      Informant said that CHARLIE MOOSE confided that he was
a little concerned about _____ since _____ had never been busted
for these other loads and he suspected _____ may be _____
        PANARELLA said if any or his crew ever gets
pinched that he would "kill" _____ in a minute.

b6
b7C

b6
b7C
b7D

      NY 3461-C-TE was contacted and stated he learned that
the following official changes had been made within the COLOMBO
"family" after a series of carefully guarded meetings:

      The new boss is THOMAS DI BELLA.  Informant said he
himself expressed surprise at the news since JOSEPH COLOMBO was
still alive.  He was told this was not an act of "disrespect"
but an act of necessity and desperation, because of the present
condition of the "family".  In addition, he learned that DI BELLA's
father many years ago had been boss of this "family".

          - 4 -

b7D

Informant said DI BELLA in the past had been under CARMINE PERSICO and that in order for him to rise to the position of "boss" it was a necessary formality that ALPHONSE PERSICO temporarily step down, elevate DI BELLA to acting boss and finally boss. When this was accomplished ALPHONSE moved back to acting captain.

Informant continued that when a new boss is named by the commission, all ranking members voluntarily surrender their positions and the new boss is then able to name those he desires to be in positions of command. ANTHONY ABBATEMARCO has been moved to underboss. Informant noted this was a complete surprise to him but observed that he was also under PERSICO and it is now evident that PERSICO and YACOVELLI are now "calling the shots" and the prior meetings were meaningless.

JOSEPH BRANCATO has been named a captain, an obvious attempt to appease the "moderate faction" of the "family".

MIMI SCIALO has been named a captain.

Informant said CHARLES PANARELLA has made no secret of his ambition and has indicated a desire to be made Consiglieri. Informant said a Consiglieri is allowed to have one or two soldiers directly under him and it is rumored he would select GREGORY SCARPA.

ROCCO MIRAGLIA would not be considered for position of captain. Informant said he heard an unconfirmed story that after JOE COLOMBO began having trouble with JOE GALLO in April, 1971, PERSICO requested to see COLOMBO at Cantalupo Realty. When PERSICO approached COLOMBO, MIRAGLIA allegedly "frisked" PERSICO. When he finished, PERSICO told MIRAGLIA that if MIRAGLIA ever touched him again he would kill him. Informant thinks this story may now have truth in it.

Informant said he had heard rumors that new members might be "made" in the COLOMBO "family" and that active members might be polled for candidates. He said if queried he would suggest PHILLIP "CHUBBY" ROSILLO (the person who shot JEROME JOHNSON).

- 5 -

Clemente (II)-326

b7D

NY 3461-C-TE advised a meeting of all the hierachy of the COLOMBO "family" which included VINCENT ALOI, CHARLES "MOOSE" PANARELLA, ALLEY BOY PERSICO, JOE BRANCATO, SALVATORE PROFACI, son of the late JOE PROFACI, who is now an acting Capo in the COLOMBO "family", NICK BIANCO, ROCCO MIRAGLIA and possibly others met in a secret location unknown to informant. At this meeting, it appeared that the COLOMBO "family" was broken into two factions with BRANCATO leading the more moderate faction and ALLEY BOY PERSICO as the leader of a more wild and reckless faction.

b6
b7C
b7D

## EFFORTS TO EXPAND COVERAGE

Agents assigned to each of the Criminal Intelligence Squads have been assigned, exclusive of all other duties, to the development of informant under the TECIP.

Clemente (II)-327